UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
MARK LEYSE, Individually and on Behalf of
all Others Similarly Situated,

                         Plaintiff,                       05CV6031 (HB)

             -against-                     **OPINION & ORDER**

CLEAR CHANNEL BROADCASTING, INC.,
CLEAR CHANNEL COMMUNICATIONS, INC.,
AND CRITICAL MASS MEDIA, INC.,

                        Defendants.
------------------------------------------------------------------------x
**Hon. HAROLD BAER, JR., District Judge:**

Defendants move to dismiss the Complaint in the above-captioned case pursuant to Fed. R. Civ. P. 12(b)(6). Oral argument was held on November 29, 2005. For the reasons stated below Defendant's motion to dismiss is GRANTED.

## I. BACKGROUND

The Complaint alleges that in June 2005, Defendants made thousands of unsolicited prerecorded telephone calls to residential telephone numbers with an advertisement for one of its radio stations, WLTW 106.7 FM. The text of the call is as follows:

> Hi this is Al "Bernie" Bernstein from 106.7 Lite FM. In case your favorite station went away, I want to take just a minute to remind you about the best variety of yesterday and today at 106.7. Motown, classic 70s from James Taylor, Elton, and Carole King; it's all here. Each weekday, we kick off the workday with an hour of continuous, commercial-free music. This week, when the music stops at 9:20, be the tenth caller at 1-800-222-1067. Tell us the name of the Motown song we played during that hour, and you'll win one thousand dollars. Easy money. And the best variety from 106.7 Lite FM.

Plaintiff alleges that this prerecorded phone message violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and as such, he is entitled to statutory damages and injunctive relief individually and on behalf of the putative class.

1

## II. DISCUSSION

In a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court will merely assess the legal feasibility of the Complaint, not assess the weight of the evidence, which might be offered in support thereof. In Re Cosi Securities Litigation, 2005 U.S. Dist. LEXIS 15603, *3-4 (S.D.N.Y. Jul. 27, 2005). Taking all of the allegations in the Complaint as true, dismissal of a claim is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

### A. The FCC's Determination

Plaintiff contends that Defendants' prerecorded calls are prohibited by the TCPA, which provides that "it shall be unlawful … to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the [Federal Communications] Commission under paragraph (2)(B)." 47 U.S.C. § 227(b)(1)(B). Each recipient of such a telephone call is entitled to statutory damages of a minimum of $500.00 per violation. Id. at § 227(b)(3). Defendants argue that the Federal Communications Commission ("FCC") has determined that prerecorded telephone messages like the one here are not prohibited by the TCPA and deference should be given to this determination.

Congress expressly gave the FCC the power to exempt from the requirements of § 227(b):

> Such classes or categories of calls made for commercial purposes as the commission determines –
> (I) will not adversely affect the privacy rights that this section is intended to protect; and
> (II) do not include the transmission of any unsolicited advertisement ….

Id. The FCC rules promulgated under § 227 prohibit initiating calls "to any residential line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call…. is made for a commercial purpose but does not include or introduce an unsolicited advertisement or constitute a telephone solicitation." 47

C.F.R. § 64.1200 (a)(2)(3). In a July 3, 2003 Report and Order ("2003 TCPA Order"), the FCC exempted from § 227 the type of prerecorded call at issue here as neither an unsolicited advertisement nor a telephone solicitation. In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC Report and Order, 18 F.C.C.R. 14, 014 (Jul. 3, 2003). Specifically, the FCC stated:

> The Commission sought comment on prerecorded messages sent by radio stations or television broadcasters that encourage telephone subscribers to tune in at a particular time for a chance to win a prize or similar opportunity. We asked whether the Commission should specifically address these kinds of calls, and if so, how. The record reveals that such calls by radio stations and television broadcasters do not at this time warrant the adoption of new rules. …We conclude that if the purpose of the message is merely to invite a consumer to listen or to view a broadcast, such message is permitted under the current rules as a commercial call that "does not include the transmission of any unsolicited advertisement" and under the amended rules as "a commercial call that does not include or introduce an unsolicited advertisement, or constitute a telephone solicitation."

Id. at ¶ 145. On April 13, 2005, the FCC reaffirmed this position and incorporated it into a final order ("2005 Final Order"). Final Rules and Regulations Implementing the Telephone Consumer Portection Act of 1991, FCC Rules and Regulations, 70 F.R. 19330 (Apr. 13, 2005).

> In the 2003 TCPA Order, we addressed prerecorded messages sent by radio stations or television broadcasters that encourage telephone subscribers to tune in at a particular time for a chance to win a prize or similar opportunity. We concluded that if the purpose of the message is merely to invite a consumer to listen to or view a broadcast, such message is permitted under the rules as a commercial call that "does not include or introduce an unsolicited advertisement or constitute a telephone solicitation." We also noted, however, that if the message encourages consumers to listen to or watch programming that is retransmitted broadcast programming, for which consumers must pay (e.g., cable, digital satellite, etc.), such messages would be considered "unsolicited advertisements" for purposes of our rules.

3

Plaintiff argues that this situation is different because the recorded phone call also advertises the station's services, but the FCC has addressed this issue.

> We decline to reverse our conclusion regarding radio station and television broadcaster messages. As explained in the 2003 TCPA Order, if the purpose of the message is merely to invite a consumer to listen to or view a broadcast, such message is permitted under the current rules as "a commercial call that does not include or introduce an unsolicited advertisement or constitute a telephone solicitation."

Id. Exemption of messages that encourage consumers to tune in for a chance to win a prize, or similar opportunity, are messages that implicitly encourage consumers to call in and listen. The FCC does distinguish between messages that invite a consumer to listen to or view a broadcast, free-of-charge, from those in which the consumer must pay, like cable or satellite radio, but that is not the situation here.

B. **Deference to the FCC's Position**

Plaintiff argues that the FCC's determination to exempt this type of phone call should not be afforded deference under Chevron U.S.A. v. Natural Res. Def. Council, 467 U.S. 837 (1984) because the 2003 TCPA Order and 2005 Final Rule are not regulations but merely "interpretive rules." But notice and comment rulemaking is generally a "very good indicator of delegation meriting Chevron treatment in express congressional authorizations to engage in the process of rulemaking or adjudication that produces regulations or rulings for which deference is claimed." United States v. Mead Corp., 533 U.S. 218 (2001). The factors that the Supreme Court found significant in granting Chevron deference are present here. Congress expressly granted the FCC authority to implement and create exemptions to § 227 "by rule or order." 47 U.S.C. § 227(b)(1)(B). Under this grant, the FCC issued its Notice of Proposed Rulemaking, received and considered comments and petitions for reconsideration, and completed its rulemaking in Orders that set forth the basis for its determinations. The Supreme Court has recently deferred to the FCC in two recent cases where the determinations came follosing the same or similar proceedings by that agency. See e.g., Nat'l Cable & Telecomms. Assn. v. Brand X Internet Servs., 125 S.Ct. 2688, __ U.S. __, (2005)(holding that deference was due an FCC determination that internet broadband services are not "telecommunications services" under the Communications Act

of 1934, 48 Stat. 1064, 47 U.S.C.S. § 151 et seq., as amended by the Telecommunications Act of 1996, 110 Stat. 56); At&T Corp. v. Iowa Utils. Bd., 525 U.S. 366, 387 (1999)(applying Chevron deference to an FCC Report and Order that defined "network element" for local telephone competition).

Applying Chevron, this Court must first evaluate whether the statute's plain terms "directly address the precise question at issue." Chevron, 467 U.S. at 843. Section 227 of the TCPA does not directly deal with the types of calls at issue, but rather invited the FCC to fill in the gaps of what types of calls would be permissible, i.e., calls that will not adversely affect privacy rights and do not include the transmission of any unsolicited advertisement. 47 U.S.C. § 227(b)(1)(B).

The second step of a Chevron inquiry requires that the Court must defer to the agency's interpretation so long as it is "not arbitrary, capricious, or manifestly contrary to the statute." Chevron, 467 U.S. at 844. The FCC's position is clear that it condones the type of call at issue here, and if the FCC's determination is reasonable, this Court is required to accept the FCC's "construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation." Id. at 843-44. I have serious questions as to whether this is the type of phone call Congress intended to exempt when it granted such authority to the FCC, and if it was, I doubt the same holds true for the constituency of those Congress-persons that voted for such a grant of authority. Nonetheless, Chevron and buttressed by affirmative congressional authority permits such a determination by the FCC following notice of a proposed rule and consideration of comments, and that's what happened here.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. The Clerk of the Court is instructed to close this motion and any open motions and remove this case from my docket.

**IT IS SO ORDERED.**
**New York, New York**
**January 5, 2006**

_____
U.S.D.J.

5